Good morning, Your Honors. May it please the Court, my name is Angelica Navarro-Sigala and I represent Petitioner Davicin Emeka Nwadinobi. I'd like to reserve two minutes for a rebuttal. Petitioner requests that the Court grant the petition and remand his case. The Board in this case affirmed the immigration judge's adverse credibility findings and also found that petitioner's due process rights were not violated because of faulty translations or the manner in which the immigration judge conducted the proceedings. In looking at the totality of the record, Petitioner testified consistently about the year of his first sexual encounter and the number of sexual partners that he had. The immigration judge questioned Petitioner on eight different occasions regarding his first sexual encounter and each time the petitioner indicated that it was in 1998. So the government, in a footnote in their brief, said they weren't really arguing that anymore. They said that they thought there was a discrepancy between the testimony and the declaration, not between two parts of the testimony. So they're not arguing that that's an appropriate basis. Isn't that right? That's how I read their brief. Yes, Your Honor. I did want to point out how many times the judge asked the petitioner these questions, because it also goes to the issue of the communication between the judge and the petitioner and possible faulty translations. There were two of the BIA's findings that I was particularly concerned about. One of them was his testimony that he had stayed with a friend in Lagos for three months, and he gave his name as Chigioke or Chigute, and the IJA noted as declarations stated that he lived with Davis. And although Mr. Nwoden-Obi gave an explanation, well, he has a bunch of different names, it wasn't clear to me that there was any evidence in the record that he did so. Was there any evidence other than Mr. Nwoden-Obi's testimony? Other than Petitioner's testimony and his declaration where he referred to his friend  There's no evidence that this friend had several different names, so why couldn't the, you know, there's no presumption of credibility, so why couldn't the IJA decide that this was a discrepancy or an inconsistency? In this case, Your Honor, we believe this was a minor inconsistency in the record that doesn't go to the merits of his asylum case. It's not utterly trivial, right? Right. It's not, we've said, you know, post-real ID act, right? Correct. Utterly trivial typographic mistake. But this was actually, he said, I lived with my friend for three months, and then he reported a different name for his friend between the declaration and his testimony. Is that utterly trivial? No, Your Honor. I believe that our standpoint How did he explain it? He explained it that on the declaration, he called him by his name Davis, but his more local name was Chigioke or Chukote, and that's what he referred to him as at the time of the testimony. When the judge asked him, why didn't you mention the name Davis, he said, it just didn't occur to me at the time of the testimony. That's the first name that popped into Petitioner's head at the moment. But there's no evidence in the record that this individual had these three different names. No, Your Honor. There's no evidence in the record other than Petitioner's testimony. Correct. Correct. And I point to the Court that this is a minor inconsistency in this case. But it's not utterly trivial. I mean, the Real ID Act specifically says for credibility determinations, it doesn't have to go to the heart of the asylum claim. And our cases just say, but if it's utterly trivial or a typographical error, but this is more than that. I think you agreed with that. Yes. It's a typographical error in the sense that the declaration doesn't provide all three names. And during his testimony, he only gave the name of Chugioke and Chukote. But the judge, I could disbelieve that. He could just say he got the name. He had one friend in the declaration, and he's naming somebody else in the testimony. Yes, Your Honor. Let me ask you. Well, it wouldn't be uncommon for somebody to have a local name and a more formal name, would it? Right. I think even in our society here in the U.S., a lot of us go by different names. So there's a plausible, he gave a plausible reason, but the IJ didn't have to believe it, right? Correct. Doesn't she have to give some reason for not believing it? She does have to give a reason, a reasonable, cogent reason for why she doesn't believe it. Correct. And did she give a reason? No, Your Honor. She just said it wasn't persuasive. It wasn't persuasive. He said there was no explanation. He just said it was a name that he used. But there was no explanation other than, you know, whenever you have a discrepancy, you can say, oh, well, that was actually another name. So there wasn't really a reason given. Well, the — I think he did say that, Your Honor. I think Petitioner did indicate to the judge that that's the name that he calls him by. And I believe, if I'm not mistaken, in the testimony, Petitioner, when they asked him about the name Chigote first, he said, I also call him Chukote, before the judge even questioned the name of Davis. So even — But he has, like, five or six names. According to the testimony, he has three names. Inconsistent to have more than one name? Is that an inconsistency? I wouldn't say it's a big inconsistency, Your Honor. I mean, my full name is Angelica Navarro-Sigala, but I go by Angie. It's not a big inconsistency. I think nowadays it's very common for people to have their formal name, and they go by a different name, an AKA. It's also very common in the Chinese culture. A lot of Chinese individuals have their Chinese name, and then they use an American name. So I don't think it's something that's very uncommon. So let me ask you about — There was another. Go ahead. No, go ahead. Another concern that the BIA had was, in his declaration, he said he had many boyfriends in Lagos, and then his declaration referred to his boyfriend, Chima, whom he later testified was his lover. But then he explained that a boyfriend is somebody that you associate with your social life, but you don't have a sexual relationship with that person. And when the IJ asked him about this conflict, he — the conflict between whether he had two sexual partners or many boyfriends, the IJ said the court does not find persuasive his attempt to reconcile these by claiming that they were male friends who he didn't have sex with, particularly since the declaration referred to his lover as his boyfriend. So why couldn't the IJ find that to be an inconsistency? Why couldn't the IJ find that to be an inconsistency? Yeah, the IJ found it was an inconsistency, and it was another one that went — in this case was material, because it was about his claim that he was persecuted on account of his sexual orientation. Right. I think at this point, Your Honor, there was a cultural issue. Petitioner described to the judge that he didn't have two sexual partners. He did testify throughout the record at various times that the two sexual partners were Omieya and Chima. In regards to the boyfriends, his definition of boyfriends was not the standard definition that we use here in the United States. When you have a boyfriend, you can have a boyfriend where you — But that's what he said. In his declaration, he had called Chima his boyfriend. And Chima, we know, was one of his two lovers. So clearly, he didn't use that term in the — Consistently. Consistently in the way that he now says is his definition of the term when he was trying to explain why there was an inconsistency. But in the — in the record, when he's doing the testimony, Petitioner does clarify to the judge that he only had two lovers and the other boyfriends were just friends that he — he — that he was with socially, but not necessarily that he had any sexual relationships with them. So he gave an explanation, but the IJ could find it not plausible, particularly in light of the declaration. Correct. Okay. And what — what explanation did she give? I believe she indicated that it — give me a second, Your Honor. I don't recall off the top of my head the explanation that she gave, Your Honor. Did you want to save some time for rebuttal? I did, Your Honor. Okay. Why don't — why don't you save some time? Oh, are we out of time already? Yes. I saved — It goes fast. Yes, it does. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Cherise Pratt for the Respondent, the Attorney General. The Board of Immigration Appeals determination must be upheld because it is supported by reasonable, substantial, and probative evidence on the record considered as a whole. Luadenobi did not meet his burden of proof. He presented conflicting evidence. And if you just look at the evidence he gave, you can see he had no problem communicating. He — he affirmed that Igbo was his best language, that he understood the interpreter. He described his parents' occupations, the type of businesses they had, where their stores were located. He talked about his Facebook account and his migration history. He talked about the reason for leaving Nigeria, how the community has a law that says there's no homosexual activity between a man and a man. He says he's a homosexual. He describes what it means to be homosexual. He demonstrated a nuanced understanding of the questions. If you look at one particular question, when he was asked, how long have you been having sex with other men, he asked for clarification. He asked the immigration judge, how many years this relationship or how many times I've had sex. He understood the questions. He understood the interpreter. And if you look closely at the record, you'll see that he begins to change his testimony when he's confronted with inconsistencies. For example, when he's asked about the number of partners, the judge is asking him, will you answer the question, please? And the DHS attorney — the ICE attorney, did you have sexual relations with — between 2004 and 2010? He says, yes, on page 147. With whom? Then he becomes evasive. I met him where I ran to once. And later, he changes his testimony and he admits when he's asked. So from 2004 to 2010, did you have a sexual relationship with any other men? He says, the person that caused my running away was Chima. That relation, the sexual relationship I had with him in 2013. Then he says, no, I did not have any sexual relationship with any other man. It's inconsistent when he has a demonstrated understanding of the language. Another inconsistency where he changes his testimony is when they talk about, like you had mentioned, the name of his roommate, where he says — and when you — he's asked him, when you went to Lagos, who did you live with? I was living with my friend. Which friend? The one that is selling articles of clothing. Did your friend have a name? I call him Chukot. Also call him Chijok. Then they confront him. Well, in your declaration, you called him Davis. He says, oh, I call him a lot of things. I call him Davis. I also call him Chijok. So you call him by three names? Yes. It's when he's confronted with inconsistencies that he — Why is that so inconsistent? Because he doesn't say that — I mean, people have multiple names. You know, that's not — there's nothing — I don't quite understand. But he doesn't bring that up. He says it was a local name. Right, but he doesn't — And a formal name. He doesn't bring up that explanation until he's confronted with how that is different from what he said in another part. So you would prefer to — And it's not the only instance. So he should have testified, well, I have a friend, and he's known by several names, and here are his names. It's odd that he would say — Is that what he should have testified? If you're referring to your friend by a certain name, let's say in his declaration, it's just odd that later he would call him by something totally different. Why is that odd? Because normally you refer to your roommate — it was his roommate — by a consistent name. It certainly can seem to be a discrepancy when you have your declaration appended to you, your asylum application saying, I stayed with my friend Davis, and in testimony, it's not Davis, it's someone else. I mean, we see that a lot, that there's a change between your application and your testimony because you've forgotten what you said in your application. Correct. I could believe that, I suppose. Correct. And that was not the only inconsistency. He was asked about the number of times he was attacked, and he changes his testimony. He says, they caught me in 2004, they caught me in 2013, 2014, and that's the day I packed. And then he's asked, how many times were you caught in homosexual activity? Two times. How many times were you attacked because you were homosexual? Three times. So why did you say in your declaration that you were attacked in 2004, in 2013, and that you were attacked in January, February, and March? That's five times. Well, 2004, that's the one I was caught, January, February, March, the times anyone sees me, they come after me with a machete to hurt me. So in total, you were attacked five times? Why did you say three times? Well, 2013 was when I was caught red-handed. Then the other was when people recognized me and started to attack me. Okay, and every time you managed to escape? Yes. So that leads, actually, to another question, which is to what extent can we consider the other inconsistencies identified by the IJ when the BIA didn't expressly mention them in its opinion? Well, you can look to the IJ's opinion to expand upon the BIA's reason for affirming, because the BIA is not required to write an exegesis of, you know, everything. Well, they relied on three primary. Yes. Or four, and then you seem to have stepped back from one of them. Is that correct? Which one? In your footnote. Oh, yes. But we can't rely on things that the BIA didn't rely on, can we? No, you can't rely on things that the BIA didn't rely on. So here the BIA says it by way of example. So I found the BIA opinion a little bit ambiguous as to what it was relying on, because it says that the immigration judge based your adverse credibility finding on specific cogent reasons, including significant inconsistencies in the Respondent's testimony in the documentary evidence, and then gives some examples. For example, the four examples. So the question is whether these are mere examples and we can look at other significant inconsistencies in the Respondent's testimony that the IJ looked at, or whether we're limited to those examples. Oh, I believe those were mere examples, and you can look at the record as a whole. But did the BIA adopt the IJ's decision? I believe it did. It did? It did. Did they use that language? It's not a verbatim opinion, is it? Do they have to say expressly I adopt it? It affirmed the IJ decision. It found the testimony was incredible. They found the testimony conflicted with the declaration regarding the name of the friend, when he realized he was homosexual, that it was inconsistent with regard to his first homosexual relationship. They found that the IJ provided him with opportunities to explain, but he was unable to persuasively do so. And, you know, because his claim lacks veracity, he has not satisfied his burden of proof. And here the allegation is that the interpreter performed incompetently. I thought under our case law that we, you know, it's generally our case law says that we review the reasons, the specific reasons given by the BIA. And I think here that's correct. Yes. And I believe here the specific reasons are supported by the record. But that's what we're looking for. Judge Acuda's question was to other reasons that were articulated by the IJ, not addressed by the BIA. So the BIA generally says the IJ's reasons, it was basing it on the IJ's reasons, and then gives some examples. Do we have a case that talks about that particular formulation? I'm not, it's not coming to mind right now. Okay. Thank you. Well, in sum, I think that you can look at the discrepancies that the board pointed to, and they can be viewed as attempts to enhance his claims of persecution. His testimony was not internally consistent. It did not comport with the asylum application and documents. And the board identified specific cogent, the immigration judge identified specific cogent reasons, and there's substantial reason, there's a legitimate nexus to the findings. We didn't talk yet about the discrepancy, the other discrepancy the BIA looked at, which was the discrepancy between what he testified his birth date was, and the date on his national ID card, and the date on his driver's license. And the briefing points to the 2013 State Department report, which says that the Nigerian government doesn't require birth registration, and the government has lax record keeping. But I wasn't clear whether there was evidence in the record showing that the Nigerian government makes errors on birth dates on cards that it does issue. Was there anything in the record on that? I don't readily recall. I'm sorry. You need to keep your voice up. I don't readily recall that. Okay. So you're not aware of anything in the evidence. We'll ask the opposing counsel. Thank you, counsel. Okay. Thank you. Your Honor, your Honors, in the last minute that I have left, I would also like to bring up to the court the due process argument that we brought up to the Board of Immigration Appeals. And the due process argument was that the immigration judge violated Petitioner's due process right when she brought in testimony from Petitioner's twin brother's testimony from a prior proceeding. I thought the BIA says we're expressly not relying on this, so it's irrelevant. Well, I disagree with that, your Honor. The BIA does think that they don't rely on their finding for adverse, they're affirming the IJ's adverse finding credibility on the testimony that was brought in by the judge. But we believe that by the judge bringing in that testimony, her opinion of the Petitioner's testimony might have been tainted because she had Petitioner's twin brother's testimony in her mind. Just for reference to the court, Petitioner testified on July 15, 2014. And on that same day, the judge rendered the denial in his twin brother's case. So all the facts and testimony regarding the twin brother's case was present in the judge's mind. Okay. You're over your time. Thank you, your Honors. Thank you, counsel. We appreciate your arguments. And the matter is submitted.
judges: Paez, Ikuta, Adelman